LITTLE
ROCK,
Jan'y 1839.

GRAY
ET AL
vs.
NATIONS

THOMAS W. GRAY ET AL *against* WILLIAM A. NATIONS.

APPEAL *from Pulaski Circuit Court.*

The rule that one co-defendant cannot be witness for his co-defendant, and that a party on the record cannot testify in the case, is subject to this exception--That if there is no evidence adduced against one of the defendants, where several are joined in an action of trespass, the court will direct the jury to find for the defendant, and then permit him to be introduced as a witness.

If several persons be proved to be co-trespassers, by competent evidence, the declarations of one, as to the motives and circumstances of the trespass, will be evidence against all who are proved to have combined together for the common object.

Where the record shows that one co-defendant had possession of part of the goods taken, and that he was present when the pretended sale of the same goods was made, and when they were taken away, any admissions or statements made by him, showing a community of design to have existed among all the defendants, and that they were accomplices in the transaction, is legitimate proof.

And if such admissions were admitted in the court below, and the record does not show their nature and character, this court will presume that they were made in the presence of the other defendants, and were coupled with other circumstances and testimony, showing a community of design and concord of action on the part of the person making them, and his co-defendants.

Papers filed after an appeal prayed and taken, signed by the judge below, and purporting to contain statements of the testimony, will not be regarded in this court.

In replevin, any evidence which shows that the defendants obtained possession of the goods, from any person not authorized to sell, is sufficient evidence of an unlawful taking.

In replevin, under the Territorial Statute, the measure of damages for the plaintiff is all the damages sustained by the taking and detention of the goods.

At common law, the plaintiff could only recover damages for the wrongful detention of the goods, in replevin.

A Statute is not to be taken to be in derogation of the common law, unless the act itself shows such to have been the intention and object of the Legislature.

The Territorial Statute concerning replevin is an enlarging, and not a restraining Statute, and authorizes the recovery of damages, as well for the unlawful taking as the unlawful detention.

Where plaintiff takes judgment by default, and a writ of enquiry against some co-trespassers, and before his writ of enquiry is executed, he takes a verdict and final judgment against the others, he will be considered as having waived his remedy against those who are defaulted, and will be restrained from afterwards proceeding on the writ of enquiry.

This was an action of replevin for sundry goods, wares, and merchandise, instituted in the court below by the defendant in error against the plaintiffs in error and *Robert Magness* and *William McCraw,*

LITTLE
ROCK,
Jan'y 1839

GRAY
ET AL
vs.
NATIONS

The plaintiffs in error pleaded *non cepit*, and judgment by default was taken against *Magness* and *McCraw*, and a writ of inquiry awarded to assess the damages as to them. Nothing more was ever done as to *Magness* and *McCraw*. *Gray* filed his plea at the return term, and *Hinkson* at the term thereafter.

On the trial of *Gray* and *Hinkson*, as appears by the bills of exceptions, the plaintiff offered in evidence the statements and admissions of *McCraw*, to prove the unlawful taking by the said *Gray* and *Hinkson* of the property mentioned in the declaration, on the ground of community of design and action between the plaintiffs in error and *McCraw*, in obtaining possession of the property as accomplices. It had been previously proved that *McCraw* had in his possession a cap, and perhaps some other articles, part of the same property for which the suit was brought, and was at *Hinkson's* house in company with *Gray* and *Hinkson*, and with Davis and Curtis, (two men who had been employed by *Nations* as teamsters to haul the goods to Jackson county, and who sold the goods to *Gray* and *Hinkson*,) at the time when one of the witnesses went to haul away the goods for *Gray*, from *Hinkson's*, and when Davis and Curtis signed a receipt to *Gray* for the purchase money given them by *Gray* for the goods. Upon this state of case, the court below permitted the statements and confessions of *McCraw* to go in evidence to the jury.

The court below instructed the jury that any evidence showing that the defendants below obtained possession of the goods in controversy from any person not authorized to sell them, was sufficient evidence of an unlawful taking. The court below also refused to instruct the jury that the plaintiff's damages could only be assessed for the detention of the property, from the time it came into the possession of the defendants below, to the time of bringing suit; and instructed the jury, that if they found for the plaintiff below, they would assess all the damages which accrued to him by the *taking* and *detention* of the property.

The verdict of the jury was—"We, the jury, find for the plaintiff the sum of sixteen hundred and forty-five dollars"—for which sum the court gave judgment.

The defendants below then moved for a new trial, on the ground that the verdict was contrary to law and evidence, which motion was overruled, and they appealed on the ninth of October. On the 20th of October, the counsel for the plaintiff below filed a statement of the

·evidence, which he prayed should be made a part of his motion to instruct the jury, and incorporated together with all the papers in the case. This statement was signed by the judge, and the defendants below filed a bill of exceptions to the opinion of the judge, permitting it to be filed.

LITTLE
ROCK,
Jan'y 1839

GRAY
ET AL
vs.
NATIONS

WATKINS & FOWLER, for the appellants:

The first question which presents itself upon the record, is, whether the court below erred in admitting evidence of the statements and admissions of *Wm. McCraw*, who was not then a party to the trial, to prove the *unlawful taking* of the goods by the appellants.

The broad, general rule of law is, that no man is to be bound, precluded, or prejudiced by the acts or admissions of any other person;—the exceptions to this general rule are such as are founded on obvious reason and justice, and, without particularizing, may be reduced to cases of agency where the acts of the agent are the acts of the principal, or of arbitration or reference where a man agrees to be bound by what another does or says, or of partners where several persons make themselves one for the convenience of trade, and the acts or admissions of one partner, within the scope of the partnership business, are the acts or admissions of all. In indictments and actions on the case for a *conspiracy*, from the nature of the action, and the secrecy of such transactions, it becomes indispensable that the acts and admissions of one conspirator, should be introduced, to throw light upon the motives and intentions of the others; but even this cannot be done, until the fact of the conspiracy is proven by other and competent testimony, and we do not recognize this to be fairly an exception to the general rule of law above stated.

" Where there are sundry parties to a suit, the confessions of one cannot be given in evidence, nor allowed to operate against any but the party confessing; where there are several defendants and one of them suffers a default, and the others plead to the action, the confession of the defaulted defendant may be given in evidence on the trial to enhance the damages; though defaulted he is on trial as to the quantum of damages, for the verdict ascertains the damages as to all the defendants." *Swift's Evidence, p.* 128; 3 *Day's Con. Rep.* 33. Now, here is an authority precisely in point, with this difference only in our favor, that by our Statute when a defendant makes default, the writ of enquiry is returnable to the next term, instead of the damages being

LITTLE ROCK, Jan'y 1839

GRAY ET AL. vs. NATIONS

ascertained instanter; and in this case *McCraw* was not a party to the trial, nor did the verdict ascertain the damages as to him, at all. But be that as it may, the evidence of the statements and admissions of *Wm. McCraw*, were not admitted to *enhance the damages*, but to prove the very fact in issue, between the appellee and the appellants, who were the parties to the trial, to wit: *the taking of the goods.*

"In civil cases it seems that an accomplice, or joint wrong doer, who is not a party to the record, is a competent witness on either side, unless he is in some way answerable over to the defendant, for the consequences of his conduct," &c.; and the author goes on to say—"It seems now to be settled that a joint trespasser is a competent witness for the plaintiff, although a recovery against the defendant would discharge the action against himself;" and that the fact of his being a co-trespasser would tend to lessen his credit. In the next paragraph, the author says, "A co-trespasser, or other joint wrong doer, who is not a party to the record, is in general a competent witness for the defendant; for the record would not be evidence for him in another action, and his interest is rather on the other side, since if the plaintiff failed in obtaining compensation against the present defendant, he might afterwards attempt to recover it from the witness; and if the plaintiff recovered, the witness would not be liable to the defendant for contribution. Where, however, a co-trespasser is made a defendant, he is in general competent as a witness on either side. (And the authorities on this point are strong, numerous, and all tending to the same conclusion.) Where a co-trespasser lets judgment go by default, he is a competent witness for a co-defendant; but he is not a competent witness for the plaintiff. 1 *Starkie Ev.* 131, 2, 3; *Wakely* vs. *Hart et al.* 6 *Binney,* 319: *Brown et al.* vs. *Howard,* 14 *John.* 119; *Buller Nisi Pruis,* 285; *Gilbert's Ev.* 250; 2 *Esp.* 552. *Swift's Law of Evidence,* 73, 4; 2 *Starkie Ev.* 581; *Blackett* vs. *Weir,* 5 *B. & C.* 389; *Doe Dem. of Harrop* vs. *Green,* 5 *Esp. Ca.* 198; *Brown* vs. *Brown,* 2 *Taunton,* 752. And see particularly, the case of *Chapman* vs. *Graves, and two others,* 2 *Campbell,* 333—a case precisely in point, where the testimony of *Frost,* a co-trespasser, who had made default, was rejected, when offered to inculpate the other defendant, and the reasons of the rule given at large.

In view of all these authorities, if the testimony of a co-defendant in tort, who had suffered a default, could not be introduced against, (or even for,) his co-defendant on trial, *a fortiori* mediate and

secondary evidence of his statements and admissions cannot be admit-
ted; for such evidence is always partial and of doubtful and suspicious
character, and for that reason justly excluded, unless the nature of
extreme cases will admit of no better testimony. If such secondary
evidence could be admitted, then the condition of the appellants in
the court below was indeed unfortunate: stabbed in the dark by the
admissions and statements of a witness, who was vitally interested
*against* them; saddled with the whole burthen of damages, without
even an opportunity of confronting that witness by cross-examina-
tion. Better if the appellants, instead of pleading to the action, had
abandoned the case, and awaited their fate. The court needs not to
be reminded, that " against joint trespassers there can be but one satis-
faction, and no apportionment of damages among the several defend-
ants." *Brown* vs. *Allan and Oliver*, 4 *Esp. N. P. C.* 158. And "if
separate suits be brought against several defendants for a joint tres-
pass, the plaintiff may recover separate *judgments* against each; but
he can have but one *satisfaction*—and he may elect *de melioribus
damnis*, and issue his execution therefor against *one* of them. *Liv-
ingston* vs. *Bishop*, 1 *J. R.* 290. And thus it results that the state-
ments and admissions of *McCraw*, who had suffered default, were
inadmissible on account of his being vitally interested, for that dama-
ges would be assessed against him, though the defendants, pleading to
issue, were acquitted. *Cressey* vs. *Webb and another*, 1 *Strange*, 1222.

But the evidence of the statements and admissions of *McCraw* were
admitted on the ground of a community of interest and design, "it
having been proven that *McCraw* had a *cap*, and perhaps some other
small articles of the same lot of goods, at the time that Davis and
Curtis signed a receipt to one of the appellants of the purchase money
of the goods, (or to that effect; see bill of exceptions). Now we suggest
that this bare, naked showing does not establish a community of inte-
rest and design; but if it shows any thing, it shows that *something* had
been proven against one of the defendants whose testimony, or rather
we should say, the evidence of whose testimony was sought to be
introduced, and that according to all the rules of law above stated,
such evidence was inadmissible. But all this is wholly immaterial;
because by making default the defendants *McCraw* and *Magness*,
*admitted the tort* laid in the declaration; and if, by any possibility, the
appellee could avail himself of their testimony, he could only do so
by entering a remitter of damages, which he did not do, but had

LITTLE
ROCK,
Jan'y 1839

GRAY
ET AL
vs.
NATIONS

*judgment* by default entered up, and a writ of enquiry of damages awarded against them.

The second assignment of errors we pass by in silence.

The third and fourth assignments of errors may be considered together. There is much barrenness in the decisions, as to the measure of damages in replevin, at the common law. But the appellee has waived any question which might arise here, by adopting in his whole proceeding our statutory regulation concerning the action of replevin, except in the one material matter of damages. Our Statute, after regulating the action of replevin at length, is clear and explicit, that "if judgment be for the plaintiff, he shall have his damages assessed by a jury, or the court; for the detention from the time the property came to the possession of the defendant to the time of bringing the action." *Dig. Tit. Replevin and Detinue, sec.* 2. In the face of this provision of law, the court below refused so to instruct the jury, but instructed them " that if they find for the plaintiff, they are to find for the plaintiff all the damages which accrued to the plaintiff by the taking and detention of the goods by the defendants."

We claim that our Statute, clear and explicit in its terms, is not so without reason. When the Statute gives the remedy by replevin, "in all cases where any goods or chattels shall be taken from the possession of any person lawfully possessed thereof, without his or her consent," it does not mean to give the plaintiff in replevin dangerous and unreasonable powers. We suggest whether the common law doctrine of distress for rent or damage feasant, is not to all intents and purpose abolished by disuse in this State; and that when the legislature so extended the remedy of replevin, it was clearly intended to make the the action of replevin similar in its operation to the action of detinue, except that in replevin the Statute requires an affidavit of the *unlawful taking*, as well as having been lawfully possessed of the chattel, before it will arbitrarily divest one man of property, and vest the possession of it in another, previous to any trial of the right of property. With the exception of the unlawful taking, replevin and detinue are co-extensive remedies; in both cases the Statute gives damages for the *detention*, but in neither, for the *taking*. If there are any peculiar circumstances attending the taking, the plaintiff hath adequate remedy, by action of trespass, and the alia enormia go in aggravation. As a further parallel between replevin and detinue, in both cases, the specific chattel may be restored to the plaintiff: in the one case, it is

restored to him on mesne process, n the other, on final process; and in
either case, the party remaining in possession of the chattel pending
the suit, gives bond to secure the other.

LITTLE
ROCK,
Jan'y 1839
GRAY
ET AL
vs.
NATIONS

The action of replevin would of itself seem to imply, that the specific chattel sought to be replevied has been delivered to the plaintiff. *Selwyn, N. P. Tit. Replevin, p.* 1143. For the plaintiff has his election to bring *trover*, and recover the value of the goods in damages, and the presumption is, that he will elect the best form of action; but in the present case such speculations are needless, because the return of the sheriff shows that the goods were delivered to the plaintiff.— Suppose the goods to have been worth $2,000 cost and carriage, with an advance of 20 or 25 per cent. by way of profit: they are charged in the declaration to have come to the possession of the defendants, on the 15th of January, 1838; the writ was issued on the 22nd, and returned executed by the sheriff on the 23rd of the same month, showing that the defendants had possession of the goods for *one week*— yet the verdict of the jury gave the plaintiff $1644 damages, so that by this proceeding, the plaintiff has not only had a return of his goods, but has recovered nearly their value in damages for this brief *detention*. It moreover appears from the declaration, that the goods replevied were of such an inanimate nature, that the plaintiff, by their detention, for a short space of time, could not have been greatly damnified. If the property sought to be replevied were a steam boat, or the like, in good business, then the plaintiff would be clearly entitled to recover such reasonable damages for the detention, as he might have suffered, by being deprived of the use of the boat, while she was in the possession of the defendant.

These facts appearing in the record clearly show, that the verdict of the jury in this case was outrageous and oppressive, and that the instruction of the court and the refusal to instruct, set out in the third and fourth assignment of errors, is manifestly erroneous.

Of this motion the appellants took no notice, except to file their bill of exceptions by way of protest. It would be an insult to your Honors to argue that the evidence in a cause can never come up before this court, unless it is brought up legitimately by exceptions to evidence, demurrer to evidence, or for a variance, or by motion for a new trial upon the ground that the verdict is contrary to evidence.

We cannot travel out of the record to state the condition in life of the appellants; but we ask for the magnitude and importance of the

LITTLE
ROCK,
Jan'y 1839

GRAY
ET AL
vs.
NATIONS

case, as exhibited by the record, that patient and thorough investi-gation, which your Honors might not consider due to the principles involved.

TRAPNALL & COCKE, contra:

During the progress of the trial on the issue joined, the appellants took various exceptions to the opinions of the court. The jury returned a verdict in favor of the appellee for $1,645 in damages, and afterwards, at the same term, the counsel of the appellee presented a draft of the evidence given upon the trial, and the court upon his motion made it a part of the record, to which the appellants excepted.—In the absence of any principle or precedent denying the authority of the court, it is not perceived how the correctness or soundness of this opinion can be successfully controverted. The appellate court will be governed more by the actual merits and general result of a cause, than the propriety or impropriety of any interlocutory opinions given by the inferior court during the trial. An erroneous opinion is frequently rendered perfectly harmless by the subsequent admission of testimony, that supplies the deficiency and materially changes the complexion of a cause. A party may, and frequently does, present a view of the case by incorporating a partial abstract of the evidence into a bill of exceptions, which would be entirely changed by a survey of all the testimony. No injury can be done, but may sometimes be prevented, by making the whole evidence a part of the record;—and the Supreme Court will then be more enabled to understand and appreciate the opinions of the inferior court, and determine according to the justice of the cause. Vide *Givens* vs. *Bradley*, 3 *Bibb*. 195; 1 *Bibb*. 41; 1 *Littell*, 255; *Clarke* vs. *Castleman*, 1 *J. J. Marsh*. 70.

The admissions of a co-trespasser are evidence against every one who acted together and in concert with him in the commission of the trespass. 1 *Saunders on Pl. and Ev.* 59; *Rex.* vs. *Inhabitants of Hardwick*, 11 *East*. 585; 2 *Starkie*, 467; although made in the absence of the others. *Wright* vs. *Court*, 2 *Car. & Payne*, 232. As to what makes co-trespassers, see 2 *Starkie*, 401, 2, 3; 19 *Johnson*, 382; 10 *Wendall*, 654; 12 *Wendall*, 39.

The action of replevin is analogous to, and governed by, many of the same rules that regulate the action of trespass de bonis asportatis, and is co-extensive with it. 7 *John*. 140, 3; 14 *John*. 17; 1 *Chitty*, 159; 3 *J. J. Marsh*. 124.

Having the goods in possession is sufficient evidence of the taking in replevin. *Walton* vs. *Kersop,* 2 *Wils.* 355; 1 *Chitty Pl.* 159. It is sufficient to show that the defendants had the goods in possession at the place alleged. 2 *Saunders' Pl. and Ev.* 287; 3 *Starkie,* 1296.

Under the general issue in replevin, which admits property in the plaintiff, see 2 *Saunders' Pl. and Ev.* 284.

The defendant is a wrong doer, and his possession is unlawful, unless he takes the goods by the authority of the owner. 1 *Saunders' Rep.* 347, c.; *Chambers* vs. *Donaldson,* 11 *East.* 65; *Graham* vs. *Peat,* 1 *East.* 244; *Hacker* vs. *Birkbeck,* 3 *Burrows,* 1556.

The plaintiff is entitled to judgment for the full amount of the injury; and all and each one of the co-trespassers, even if not tried at the same time. *Sodinsky* vs. *McGee.* 4 *J. J. Marshall,* 269.

The judgment is for the taking and detention of the goods.

The record shows a motion for a new trial of the cause still pending, and consequently on that ground the appeal must be dismissed.

DICKINSON, *Judge,* delivered the opinion of the court:

This is an action of replevin. The declaration is in the usual form. On the return of the writ, the appellants appeared and pleaded non cepit, to which there was a replication and issue, and judgment rendered in favor of the appellee; to reverse which an appeal is now prosecuted in this court. On the trial of the cause at the October term, 1838, judgment was taken by default against *William McCraw* and *Robert Magness,* co-defendants, and a writ of enquiry awarded.— Whether the writ of enquiry was ever executed or not, we are at a loss to determine; for the record does not show that any further proceedings were afterwards had against them. During the progress of the trial, several bills of exceptions were filed to the opinion of the court by the appellants, and the assignment of errors presents the questions of law that were made in the court below. For the appellants, it is contended on the first assignment, that the evidence of *McCraw,* offered by the appellee in support of his action, was inadmissible; he being a co-defendant upon the record. The bills of exceptions set forth, that the testimony of *McCraw* consisted in statements and admissions that conduced to prove the unlawful taking by *Gray* and *Hinkson* of the property or goods mentioned in the declaration, on the ground of community of design between *Gray, Hinkson,* and *McCraw,* in obtaining possession of the goods; it being proved that

LITTLE
ROCK,
Jan'y 1839

GRAY
ET AL
vs.
NATIONS

LITTLE
ROCK,
Jan'y 1839

GRAY
ET AL
vs.
NATIONS

*McCraw* had in his possession a cap and some other small articles belonging to the lot of goods for which the suit is brought, and that he was at *Hinkson's* in company with *Gray* and *Hinkson*, where Davis and Curtis signed a receipt to *Gray* for the purchase money given for said goods; and that he was also there when the goods were hauled away for *Gray*. It has been often ruled in this court, and the soundness of the doctrine cannot be controverted or denied, that all legal presumptions operate in support of the verdict and judgment below, unless the same be manifestly erroneous by some affirmative matter contained in the record itself, or from some other facts and circumstances that the court is bound judicially to take notice of. This being the case, we are bound to presume every thing in favor of the verdict and judgment of the Circuit Court. The rule that one co-defendant cannot be witness for his co-defendant, or that a party on the record cannot testify in the case, is subject to this exception: For instance, if there is no evidence adduced against one of the defendants where several are joined in an action of trespass, the court will direct the jury to find a verdict for that defendant, and then permit him to be introduced as a witness; for if this was not the case, by joining several defendants in trespass or the like, the plaintiff would thereby exclude from the consideration of the jury evidence that was in every way important and competent. The issue in this case was non cepit, and therefore it was incumbent on the plaintiff to prove the taking of the goods, or part of them, in the place specified in the declaration; but it is sufficient under this issue to prove a detention of these goods by the defendant in that place. 2 *Starkie*, 1295. And what evidence could be more satisfactory than the admissions of the defendants themselves; for it is well settled that if several be proved to be co-trespassers by competent evidence, the declaration of one as to the motives and circumstances of the trespass, will be evidence against all who are proved to have combined together for the common object. The record in this case shows that part of the goods were in possession of *McCraw*, that he was present when the pretended sale was made, and when they were taken away; and any admissions or statements that he made, showing a community of design to have existed among all the defendants, and that they were accomplices in the transaction, was legitimate proof. The bill of exceptions wholly fails to set out the extent and character of these admissions. We are bound therefore to presume that they were made in the presence of *Gray* and *Hinkson*,

LITTLE
ROCK,
Jan'y 1839

GRAY
ET AL
vs.
NATIONS

and coupled with other circumstances and testimony showing a community of design and concert of action on the part of *McCraw* and the appellants, and therefore proper and legitimate evidence for the consideration of the jury. It may not be amiss to state in this stage of the examination, that there are two papers attached to the record, and which are signed by the judge, purporting to give a detailed statement of the evidence or testimony adduced on the trial. We cannot regard them as constituting any part of the record, for they were filed, one on 19th, the other on the 20th of October, 1838, and the record shows that prior to that time, to wit, on the 17th day of the same month, an appeal had been regularly prayed and taken; and it does not appear that these exceptions were taken during the trial, or upon any motion made previous to the granting of the appeal; consequently, they cannot be regarded as comprising a part of the record; and it is therefore improper to look into or give any opinion upon these statements.   The second assignment questions the opinion of the court, in instructing the jury "that any evidence which showed that the appellants obtained possession of the goods from any person not authorized to sell, was sufficient evidence of an unlawful taking by the appellants."

It was certainly competent for the plaintiff to show that he had a general and special property in the goods, and that the defendant had obtained possession through the instrumentality of any person who had no authority to sell, or to deliver the possession.   If the goods were the property of the appellee, and the appellants obtained possession of them without authority of law, surely these facts or circumstances were calculated to prove an unlawful taking by the appellants, and, when coupled with that testimony, would amount to full and conclusive proof of an unlawful taking.   The court therefore rightly instructed the jury, that any evidence that showed an unlawful taking by the appellants, was competent proof in the cause.   The third and fourth assignments may be considered together.   1st, In refusing to instruct the jury that if they find for the plaintiff, they are to assess his damages only for the detention of the property, from the time the same came into the defendant's possession, to the time of bringing the action; and in instructing them that they are to find for the plaintiff all the damages which he had sustained for the taking and detention of the goods.   In order to determine the question correctly, it is necessary to consider the nature and character of the action of

LITTLE
ROCK,
Jan'y 1839
GRAY
ET AL
vs.
NATIONS
replevin, which is analogous to, and governed by many of the same rules that regulate the action of trespass, de bonis asportatis, and is co-extensive with it; for it is laid down by BLACKSTONE that the taking and detaining a man's goods are respectively trespasses. *Archbold's Prac.* 194. It is stated that in replevin a verdict for the plaintiff gives damages precisely as in trespass. At common law the action of replevin was brought only for the restitution of goods unlawfully taken, with damages for the loss sustained by the invasion of the parties' rights, and was generally founded upon a distress wrongfully taken, and without sufficient excuse; and as the goods were delivered to the owner, he could only recover damages for the unjust detention from the time the same came into his possession, until the bringing of the action, and not for the caption; because the original taking was unlawful.—— This rule was based upon the principle, that as such original taking was lawful, it would be unjust that the plaintiff should recover any damages other than for such detention; for that is the gist of the action. *2nd Chitty's Blackstone,* 146, 151; *Chitty's Pl.* 146; *Coke Littleton,* 145, *b.* The question now recurs, does our Statute enlarge the common law, or is it in derogation of it? In determining this point, it necessarily tests the correctness of the instructions given to the jury in the court below. It is a rule of sound, legal construction, fortified by authority and reason, that a Statute shall not be taken in derogation of the common law, unless the act itself shows such to have been the intention and object of the Legislature. The proceeding in this case is prosecuted under our Statute, and that *it is an enlarging* and not a restraining Statute, the act itself clearly demonstrates; for it declares that in all cases where any goods or chattels shall be taken from the possession of any person lawfully possessed thereof, without his or her consent, it shall be lawful for such person to bring his action therefor against any person or persons in whose hands or possession they may be found, and that before any writ of replevin shall issue, the plaintiff shall file in the office of the clerk of the Circuit Court an affidavit, stating he was lawfully possessed of the property in the declaration mentioned, and that the same was unlawfully taken from his possession, and without his consent, within one year next preceding his application for such writ; and that he is lawfully entitled to the possession thereof. If he then complies with the other regulations of the act, he is entitled to prosecute his remedy in conformity therewith.

Here the action is clearly given for the unlawful taking, as well

as for an unlawful detention, and of course if the plaintiff is en-
titled to a verdict, he should be permitted to recover damages,
as well for the unlawful taking, as for the unlawful detention, of
the property.    To give him a right to the action for an unlawful
taking, and to afford him at the same time no remedy for such a taking,
would be for the Legislature to clothe him with a right, and in effect
to deny him any adequate redress for the injury sustained.   By the
common law, if he was entitled to a verdict, he was entitled to dama-
ges only for the detention of the property, and not for the caption;—
and the principle is fully recognized and established by our Statute:
and where the Statute, in addition to this, declares the action shall be
for the unlawful and wrongful taking of the property out of the pos-
session of him who is entitled to it, it certainly intended to extend
to him the necessary redress for the injury it asserts he has sustained.
If these positions be true, then the instructions of the court below are
evidently correct.   They merely assert that the jury are to find for
the plaintiff all the damages which accrued to him by the taking and
detention of the goods by the defendants, which is in strict conformity
to our Statute.   Before the examining of the record, as previously
remarked, it does not appear that any further steps were taken upon
the writ of enquiry awarded against the co-defendants, nor is any
question raised in point.

There can have been no doubt but that the appellee had a right to
prosecute his action to recover, as well against the appellants, as the
other co-defendants; but he is entitled to one satisfaction: he should,
after the verdict had been rendered in his favor against the appellants,
have omitted to enter up judgment against them, until the damages
had been awarded against the other co-defendants.   He could then
have made his election as to which of the parties he would have had
judgment against, and relied upon for satifaction; but inasmuch as,
upon the rendering of the verdict against the appellants, he proceeded
to enter up final judgment, it must be considered that he had made his
election to proceed against them alone, and the doing so operated as
a restraint against the co-defendant, and detained him from any fur-
ther proceeding upon the writ of enquiry.   We are therefore of opin-
ion, that there is no error in the proceedings, and that the judgment
of the Circuit Court of Pulaski county be affirmed with costs.