ISAAC N. JONES, AND OTHERS, *against* BUZZARD AND HERNDON.

ERROR *to Hempstead Circuit Court.*

Papers copied into the transcript, purporting to be instructions asked for, and given or refused, marked on the margin with the word " given," or " refused," opposite each instruction, are no part of the record.

And where a party moves for a new trial because the verdict was contrary to law ; and because, second, certain instructions were refused ; but does not except to the opinion of the court overruling his motion for a new trial, he is equally as far from making the instructions a part of the record.

The fact that no exceptions were filed, proves that the court was right in refusing the motion for a new trial, or that the party waived his motion.

In action on the case, a recovery, release or satisfaction need not be pleaded, but may be given in evidence under the general issue. Whatever will in equity and conscience preclude the plaintiff's right of recovery, may be given in evidence.

Where a writ of attachment is made a part of the record, and recites the affidavit on which it issued, such recital does not make the affidavit a part of the record, though separately copied into it.

Where, in case for negligence, one count in the declaration recites a writ of attachment, by virtue of which, it is alleged, certain property was seized, and afterwards lost by negligence of the sheriff and plaintiffs in attachment, the defendants have a right to read the original writ in evidence to the jury.

An unlawful levy upon property, as under a void writ of attachment, is such a tortious taking and conversion as will support trover.

Under the Organic Law of the Territory, the Legislature of the Territory had ample power to give a justice of the peace authority to issue writs of attachment returnable to the Circuit Court, whether this was a judicial or ministerial act : for they could give him power to do either one or the other act.

The writ of attachment, issued by a justice and returnable to the Circuit Court, lay, under the Territorial Law, as well against non-resident as resident debtors, or persons endeavoring to remove themselves or effects beyond the Territory: and upon unliquidated, as well as liquidated demands.

The statute was remedial in its nature, and therefore to be construed liberally, to prevent the mischief for which it was enacted.

The idea that the creditor and debtor must both have been residents of the Territory is wholly untenable.

If the writ, under that statute, was issued upon an affidavit following the form prescribed by the statute, it was valid.

ABSENT, RINGO, *Chief Justice.*

This was an action of trespass on the case instituted in Lafayette Circuit Court, by the plaintiffs in error, against the defendants in error, together with Burkett D. Jett.

The first count was a count in trover, alleging the loss by the plaintiffs, and the finding and conversion by the defendants of sundry articles therein specified.

The second count specially stated that the defendants in error, on the first day of June, A. D. 1833, at Lafayette county filed with one Massach H. Janes, a justice of the peace, the affidavit of said Buzzard, stating that the plaintiff, Roberts, was indebted to the defendants in error in the sum of one thousand dollars, or thereabouts, for and on account of damages sustained by them by the failure of said Roberts to perform his agreement to tow a certain keel-boat up Red river, and deliver certain loads of corn at certain places, all therein particularly specified; and stating further that he, said Buzzard, had good cause to believe that said Roberts was not a resident of, or residing in the Territory of Arkansas, so that the ordinary process of law could not be served on him, and that said Buzzard and Herndon were thereby in danger of losing their said debt. The count then stated that upon this affidavit a writ of attachment was issued by said justice, against said Roberts, returnable to the next term of Lafayette Circuit Court, which came to the hands of said Jett as sheriff, to be executed; and, upon that, said Jett, on the 3d day of June, A. D. 1833, before the return day of the writ, at Lafayette county, at the special instance, and by the express direction of said Buzzard and Herndon, levied the said writ on a certain steamboat, Bolivar, then navigating Red river, the property of the plaintiffs in error, with her tackle, engine and furniture: that said defendants did not take proper care of said boat, &c., and by their negligence she was lost.

The third count was an anomalous one, stating that the plaintiffs were owners of said steamboat, and that the defendants *posesssed themselves of her*, to plaintiffs' great damage.

On the declaration, and an affidavit annexed, a capias issued, which was executed on all the defendants, who severally gave bond for their appearance.

At the return term Buzzard and Herndon pleaded not guilty, and Jett also filed his separate plea of not guilty, and leave was given to each party to file special pleas of justification.

The case was then, on application of the plaintiffs, transferred to Hempstead county.

At April term, 1839, Buzzard and Herndon, having severed in their

pleading from Jett, the case came on for trial as to them, and a verdict was rendered in their favor.

On the trial the defendants offered to read, in evidence to the jury, the original writ of attachment, recited in the second count of the declaration, which was objected to by the plaintiffs, but permitted by the court, and the plaintiffs excepted, and by their bill of exceptions made the writ of attachment, in which was recited the affidavit on which it issued a part of the record.

The clerk copied into, and sent up as a part of the transcript, what purported to be a separate copy of this affidavit, as also the sheriff's return on the writ. There were also copied in the transcript two motions, one of the plaintiffs, and one of the defendants, each for several instructions; and on the margin of each motion, opposite each instruction was written the word " given," or " refused.", None of the instructions moved for were made part of the record by bill of exceptions or otherwise.

After the verdict, the plaintiffs moved for a new trial, on two grounds; First, that the verdict was contrary to law: Second, that the court erred in refusing the first and second instructions asked by the plaintiffs' counsel, and in giving the instructions asked by defendants' counsel; which motion was overruled.

TRIMBLE, for plaintiff in error:

The plaintiffs in error rely on the following grounds to reverse the judgment of the Circuit Court, in this case. First, the Circuit Court ought not to have allowed the said writ of attachment to be read as evidence to the jury. Second, the said court erred in instructing the jury that said writ of attachment was a justification to the defendants in taking and detaining the said boat, &c. &c.

The following objections to the writ of attachment will be found available. First, the Justice of the Peace had no jurisdiction of the subject matter of the attachment, of the person of the defendant, (David Roberts,) he being a non resident, nor of the place. Second, the said attachment is void, being contrary to law, and not in conformity to the act which authorizes a Justice to issue an attachment. It is void for uncertainty. The objection is that the Justice of the

Peace had no jurisdiction or power to issue the attachment offered in evidence. The power of a Justice of the Peace to issue an attachment for a sum over fifty dollars, and returnable to the Circuit Court, can only be derived from the 29th section of the law. See *Steele and McCampbell's Digest, title Attachment, p.* 88, " In all cases where any person has any debt or demand against any other person in this Territory, and he shall have good cause to believe that said debtor has removed, or is about to remove, himself or effects out of this Territory, is shall be lawful for such creditor, in all cases when the demand shall exceed the sum of fifty dollars, to apply to some Justice of the Peace of the county where such debtor resides, and to file his affidavit in writing, stating that the person (naming him) is indebted to him in a sum exceeding fifty dollars, and that he has good cause to believe that the said defendant is not a resident of, or residing, in this Territory, or that he is about to remove himself and effects without this Territory, (as the case may be,) so that the ordinary process of law cannot be served on him, and the said plaintiff is thereby in danger of losing his said debt: whereupon, it shall be the duty of said Justice to issue a writ of attachment, returnable to the next Circuit Court of the county in which he resides, commanding," &c. In this case the attachment recites the affidavit as a ground for issuing the writ. The recitation is as follows: " Whereas Jacob Buzzard has this day before me, a Justice of the Peace in and for the county aforesaid, personally appeared and subscribed and filed his affidavit, stating that David Roberts is indebted to him and one Fleetwood Herndon jointly, in a sum exceeding fifty dollars, that is to say in the sum of one thousand dollars or thereabouts, and that he has good cause to believe that the said defendant, David Roberts, is not a resident of or residing in the Territory of Arkansas, so that the ordinary process of law cannot be be served upon him, and that the said Buzzard and said Herndon, plaintiffs, are thereby in danger of losing their said debt," &c. In order to decide this question of jurisdiction, it will be necessary to ana-lyze the 29th section, referred to, also the recitation in the writ, (which is a part thereof, which lays the foundation of the magistrate's proceeding which gives jurisdiction, if he has any,) and subject both to recognized tests of construction, and apply to them those principles

which govern other judicial tribunals in determining like questions. Every human jurisdiction rests on one of these foundations, or on several of them together: First, the place or territory over which it is exercised, and that is called jurisdiction over the place, *in locum:* Second, The persons which are subject to its action, and that is jurisdiction over the person, *in personam:* Third, the subjects of which it takes cognizance, and that is jurisdiction over the subject matter, *in materiam.* This last species of jurisdiction is sometimes limited by persons or places, by being restricted to cases in which certain persons are concerned, or to matters which arise or happen in certain localities. Thus the Constitution of the United States gives jurisdiction to the Federal Courts of all suits between aliens and citizens of different States. This jurisdiction is general as respects the subject of litigation; but is limited by the relative character of the litigant parties. It may therefore be considered as within the class of jurisdictional power over the subject matter, vesting only with respect to certain persons, *ratione personarum.* In like manner the court of admiralty has cognizance of all things done on the high seas. This jurisdiction is also founded on the subject matter: it is not complete, however, until made so by the concurrent circumstances of locality; it is therefore *jurisdictio in materiam ratione loci rei actae.* *Duponceau,* 21, 22.

For example, a citizen of Kentucky brings a suit in the Federal court against a citizen of Arkansas, the declaration must show that the plaintiff is a citizen of Kentucky, and that the defendant is a citizen of Arkansas, before the jurisdiction of the Federal Court will attach so as to be exercised over the subject matter.

Thus, in the case before the court, it should appear from the affidavit that the debt or demand is held by some person against some other person in the Territory, and it must further appear on the papers, that the Justice of the Peace who issues the attachment is a resident of the same county with the debtor. By the affidavit in this case, it appears affirmatively that David Roberts was at the time of issuing the writ in this case not a resident of or residing in the Territory, consequently could not be a resident of Lafayette county. By the said 29th section, the jurisdiction only attaches under particular

circumstances, and then only to the Justice of the county where the debtor resides.   The affidavit must be filed in writing, and it is necessary that all the various facts which are stated in the 29th section, and which constitute the whole of that special case, which will authorize the issuing an attachment, must exist and concur to give the jurisdiction: they are all conditions precedent to the exercise of the power by the magistrate, and must be stated in the written affidavit, and if one be omitted, the whole of the foundation of the Justice's power is as much broken as if all had failed.   Which one of those several facts may be omitted in the affidavit?   If any, why not omit all, and rest entirely on the presumption, that as the magistrate exercised the power, that therefore he had the power, the jurisdiction.

Two distinct questions are involved in this section: First, it is to be looked to as a source of jurisdiction; and second, as a rule or means of its exercise.   See *Du Pouseau on jurisdiction*, *p.* 6.   It is of the first importance, in this investigation, that these two questions should be kept separate, so as to avoid the error of deriving a jurisdiction from that part of the section which only prescribes the rule by which the jurisdiction is to be exercised, and at the same time we should be particularly careful not to deserve the jurisdiction of the officer or court from that part of the section which describes the extraordinary case which alone will justify the issuing of an attachment.   The first part of the 29th section describes the extraordinary case.   It then points out the officer who shall have power or jurisdiction to issue the attachment, to wit: "some Justice of the Peace of the county where such debtor resides."   This part of the section is the one and the only part which describes the officer or court who has power or jurisdiction to issue the attachment, and afford the inceptive remedy for that extraordinary case described in the first part of the section. Whoever, then, exercises this jurisdiction, must fill the description, and be indentical with the person described in that part of the section, i. e. some Justice of the Peace of the county where the debtor resides.

This question of jurisdiction is precedent to and paramount the question by what rule the jurisdiction shall be exercised, that is, by what rule the remedy shall be applied after (and not until after) the jurisdiction is conceded.   When the question of jurisdiction is con-

Jones, and others, *against* Buzzard and Herndon.

ceded, it may then become a matter of enquiry how or by what rule it shall be exercised. That portion of the section which prescribes what shall be done by the plaintiff cannot, and ought not, to be referred to as a source of jurisdiction, (to illustrate.) This court derives its jurisdiction from one source, to wit: the constitution. The mode *of exercising* that jurisdiction is derived from a different source—the statutes. Here the distinction between the questions is obvious.

By the 29th section, referred to, the extraordinary case is described—the jurisdiction given, and the mode of its exercise. The questions are no less distinct in reference to the Justice of the Peace than in reference to the court: in either case, no inquiry is made as to the mode of proceeding until the question of jurisdiction is settled; and it would be equally absurd to look to that part of the 29th section which prescribes the rule of proceeding for the jurisdiction of the justice, as to look to the law prescribing the mode of proceeding in the Supreme Court as a source of jurisdiction.

So with regard to other courts—their jurisdiction and mode of proceeding. If the above reasoning be correct, (and that it is, I have much confidence,) two consequences must follow: First, that the question by what rule it shall be exercised; and second, if there be any inconsistency between that part of the 29th section, which prescribes the mode of proceeding, and that part which confers jurisdiction, then the clause conferring jurisdiction must govern, and so much of the other part of the section as is inconsistent with it, must be inoperative.

Suppose the necessary precedent facts to exist: the section referred to says, " it shall be lawful for such creditor, in all cases where the demand shall exceed the sum of fiifty dollars, to apply to some Justice of the Peace of the county where such debtor resides." What Justice of the Peace has jurisdiction? Surely none other than one who fills the above description, i. e. some Justice of the Peace of the county where such debtor resides; and this is consistent with the first part of the section which says, " in all cases where any person has any debt or demand against any other person residing in this Territory;" both evidencing that the debtor must be a resident of the Territory, and of some county. If he (the debtor) be a non-resident of the Territory, he is not subject to an attachment. If he is not a resi-

53

dent of some county, no Justice of the Peace has jurisdiction. Here the jurisdiction over the subject matter is wholly governed by the place and person of the debtor, and by either the place or person. Thus the Federal Court of Arkansas has jurisdiction over subjects in matters of debt; but this only attaches, and is wholly governed by the locality of the debtor in Arkansas; so with the additional fact that the plaintiff is a resident of some State; and these facts must appear on the record.

But perhaps it may be said that the affidavit in this case pursues the statute strictly: for the argument sake, be it so. We have above endeavored to show that it is only resident debtors that are subject to this process of attachment; and also that the debtor must be a resident of the same county with the Justice of the Peace, before the jurisdiction can attach and be exercised by the Justice. We have also endeavored to show that the question of jurisdiction is precedent, and must overreach the question as to the mode of proceeding; and, further, that if there be any inconsistency between these two parts of the section, then the latter must yield to the former.

The first part of the section says, " in all cases where any person has any debt or demand against any other person in this Territory." The part of the affidavit which speaks of the locality of the debtor, says, " and that he has good cause to believe that the said defendant, David Roberts, is not a resident of, or residing in the Territory of Arkansas, so that the ordinary process of the law cannot be served upon him," &c.

These are inconsistent.

That part of the section which describes the conduct on the part of the debtor, which will subject him to this process, says, " that said debtor has removed or is about to remove himself or effects out of this Territory," &c. The affidavit says " that said defendant, David Roberts, is not a resident of, or residing in the Territory of Arkansas."

This affidavit is not an equivalent for either of the statements opposite.

It is not equivalent to the statement that said debtor has removed out of the Territory; for this implies that he was once in the Terri-

Jones, and others, *against* Buzzard and Herndon.

tory; that leaves no implication of the kind. This is consistent with the first part of the section; that is not. Again,

The section says, " it shall be lawful for such creditor, in all cases where the demand shall exceed the sum of fifty dollars, to apply to some Justice of the Peace of the county where such debtor resides." This gives power or jurisdiction to some Justice of the Peace of the county where such debtor resides, &c. The affidavit states " that said defendant, David Roberts, is not a resident of, or residing in the Territory of Arkansas."

The affidavit says the debtor is not a resident of the State, consequently could not be a resident of Lafayette county; wherefore, no Justice of the Peace of Lafayette county could issue the attachment; that is, no Justice of Lafayette had jurisdiction in the case, either of the person or subject matter, the defendant not being located in his county. If a local action is brought in a wrong county, this may be pleaded in abatement of the plaintiff's writ, as well as to the jurisdiction, and if it appear on the record, the defendant may demur, or the plaintiff may be nonsuited. *Story's Pleading* 25, where 1 *Wils.* 165, 1 *Cowp.* 409, is referred to. This proceeding is local by the statute, i. e., by the 29th section it is local to the county where the defendant resides; local in respect to the residence of the defendant; and local in respect to the jurisdiction of the Justice. Actions may be local in reference to the subject matter of the suit, as in real actions or ejectments. They may be local in reference to the person of the plaintiff or defendant. The first are so by the common law; the latter by our statute.

The argument, so far, has been on the ground that the affidavit strictly pursued the statute. Now whatever of inconsistency has been exposed in the above argument, it will be for the defendants here to reconcile; and being themselves within all the provisions of the 29th section, at least within that which confers jurisdiction; and they must also show that the debtor was such a resident of the Territory as would subject him to this process. If, in their anxiety in the affidavit to follow the words of the statute, they have left the substance to grasp at the shadow, this court will not allow them to make that

shadow a justification for the injury which they have committed on the property of the plaintiffs.

But I will now endeavor to show that there is little or no inconsistency in the 29th section, and that all the inconsistency is in the affidavit.

That part of the 29th section which speaks of the affidavit to be made by the creditor is as follows, viz: " And to file his affidavit in writing, stating that the person (naming him) is indebted to him in a sum exceeding fifty dollars, and that he has good cause to believe that the said defendant is not a resident of or residing in this Territory, (as the case may be,) so that the ordinary process," &c. &c. Now this part of the section was only intended as a form to direct the creditor, and the words not a resident or residing in this Territory, and the words about to remove himself and effects, were intended as examples to illustrate the intention of the Legislature, for the words (as the case may be) commands that the affidavit should be so made as to conform to the true state of the case, and to comply with the previous requisitions of this section; by adopting this construction, this section is relieved of all apparent incongruity, and a sensible effect is given to all parts of the section.

But to depart from this construction of that part of the 29th section which describes the extraordinary case that will authorize this proceeding, to wit: " In all cases where any person has any debt or demand against any other person in this Territory, and he shall have good cause to believe that said debtor has removed or is about to remove himself or effects out of this Territory," and adopt a different one, and perhaps the true construction, to wit: that there are but two acts of the debtor that will justify the issuing of an attachment, viz: First, that he has removed himself or effects. Second, that he is about to remove himself or effects out of this Territory, &c. Now the affidavit in this case will not satisfy either of the above cases. The affidavit which states that David Roberts is not a resident of or residing in the Territory of Arkansas, so that, &c., is not equivalent to the case of the debtor having removed himself or effects. Nor is it equivalent to the case of the debtor being about to remove himself or effects out of the Territory. The counsel for the plaintiffs must again insist that the specification in that part of the 29th section which *refers to the*

form of the affidavit was there inserted by way of example, and not to be adopted in all cases, but that the affidavit should be so varied as the case requires, and to show a state of the case as is described in the first part of the said section. The counsel would here refer to a preceding part of this argument and to the authority: *exparte Schroeder*, 6 *Cow.* 603; 1 *Wend.* 44; 2 *Kent Com.* 402, where it is laid down that an attachment cannot issue against a debtor who resides out of the Territory. .

Another construction may be given to the first part of the 29th section; *i. e.,* that this part of the section provides for four cases: First, where the debtor has removed himself out of the Territory: Second, where he has removed his effects out of the Territory: Third, where he is about to remove himself out of the Territory: Fourth, when he is about to remove his effects out of the Territory.

This construction will not help the defendants, for the affidavit is equally inapplicable to either of these cases. It cannot be pretended that it will apply to either of the three last cases, and it will not apply or satisfy the first because that case is a case of removal, and implies that the debtor was once a resident of the Territory, whereas, the affidavit states him to be not a resident of the Territory, and leaves no implication that he ever was a resident; but even such an implication would not secure against the positive requisition of the section which declares that the debt or demond must be against some other person in the Territory. For let it be remembered through the whole of this argument, that the recitation of the affidavit in the attachment proves affirmatively that David Roberts, the defendant in that proceeding, was not a resident of or residing in the Territory of Arkansas, whereas the section referred to gives this process by a Justice of the Peace, only in cases when the creditor, i. e., any person, holds a debt or demand against a debtor, i. e. against any other person in this Territory, and it is not shown in the attachment, or elsewhere, that the plaintiffs in attachment were residents of the Territory of Arkansas. Now, may a non resident creditor sue out this process against a non resident debtor who may have property in the Territory? It is respectfully urged that he cannot; that such are not the persons expressly described in the said 29th sec-

tion—this is not the meaning and intention of the Legislature, but if so, what Justice of the Peace will have the power, i. e., the jurisdiction to issue the process? This 29th section requires that the application shall be made " to some Justice of the Peace in the county where such debtor resides." May some Justice of the Peace for the county where the property of the debtor is found issue this process. Such a Justice of the Peace is not the officer contemplated or described by the said section, the jurisdiction or power does not attach to a Justice of the Peace for the county where the debtor's property may be found, but to a Justice of the Peace where the debtor resides. There is a strong implication in this section that the plaintiff or creditor should be a resident of the Territory as well as the debtor: and shall it be said, *no*, justified and sustained by our tribunals of legal justice, that a non resident may come into the (then) Territory, and finding another non resident's property here, subject that property to this harsh and extraordinary process, without the knowledge of the debtor, without his having the opportunity or power of making defence.

There are certain immutable principles of justice inherent in the nature of man—principles which are traced upon the tablet of the human breast by the hand of unerring wisdom; principles which are set forth by the Constitution of your own State as inherent and indefeasible—principles which are ingrafted upon the Constitution of the United States—principles which declare that no one shall be deprived of life, liberty, or property, without due process of law. Process which the plaintiff shows himself legally entited to demand and use—process to which the defendant may be legally subjected—process issued by an officer or legal tribunal legally constitued for that purpose, and to whom the defendant is legally amenable.

What would be the proper affidavit in the several cases which might arise under the 29th section? I will endeavor to give to the court what would be the proper affidavit. It should show that the debtor was at the time, or lately had been, a resident of the Territory, and that he has removed or is about to remove himself, or is about to remove his effects, out of this Territory.

So far as the conduct of the debtor is concerned there are three causes enumerated in this section, which will justify the issuing an at-

tachment. First, that he, the debtor has removed: Second, that he is about to remove himself: Third, that he is about to remove his effects out of this Territory so that the ordinary process of law cannot be served, &c. If the first cause is the one relied on then the affidavit should be that he, said debtor, has removed himself out of the Territory, &c. If the second cause is the one relied on, then the affidavit should state the fact that he is about to remove himself, &c., and so of the third cause.

The statute ought to be strictly pursued, this being a summary and extraordinary remedy in special cases. 1 *Mar.* 355; 2 *Mar.* 350. And if an inferior jurisdiction can take nothing by intendment, that is by construction, then the moment that we have to resort to construction or intendment, that moment we give up the question. 3 *Salk,* 320. *Guilam vs. Hardisty.*

This statute clearly describes the debtor, and what acts, so far as he is concerned, will subject him to this process, it then directs what to be done on the part of the plaintiff. First, he must show that the debtor was, or is a resident of the Territory, subject by his acts to this processs; that he apply to some Justice of the county where the debtor resides, &c. This part of the section defines what Justice shall have power to issue the process. If the debtor was not a resident of any county, (i. e.,) if he was not a resident of or residing in this Territory, then no Justice had jurisdiction, it as well attached to a Justice of Hempstead or Washington county, as to a Justice of Lafayette.

An attachment must be sued out from a Justice of the Peace of the county where the debtor resides. 2 *Marshall,* 451. And the debtor must be a resident of the State. *Ex-parte Schroeder,* 6 *Cow.* 603; 1 *Wend.* 44; 2 *Kent Com.* 402.

If jurisdiction over the subject matter may be limited by the place, according to the principle before adverted to, then here is an instance where the jurisdiction of the subject matter is limited by the county, and only attaches by the concurrent circumstances of the Justice of the Peace and the debtor residing in the same county at the time the application is made. Again, the debtor and creditor must be both residents of the Territory, at least the debtor must, and he must be

about to remove himself or effects out of the Territory, or must have removed. In all these cases, clearly implying that the defendant must at some time have been a resident. The affidavit in the case before the court, does not show that the defendant, in this case, was a resident of the Territory at any time, but on the contrary, shows that he was a non resident. The three acts of the defendant, any one of which will suffice, the other necessary circumstances concurring, are that the defendant has removed, or is about to remove himself, or is about to remove his effects out of the Territory. Now will the affidavit stating that the defendant is not a resident of or residing in the Territory, so that the ordinary process of law cannot be served on him, fill any of the foregoing pre-requisites? It is not equivalent to a statement that the defendant is about to remove himself or effects. Is it equivalent to a statement that the defendant has removed? Surely it cannot be so taken. One is the statement of a fact which is made up of action, and the fact that the defendant was once a resident; the other is the statement of a fact that embodies only the passive existence of the defendant out of the Territory, and leaves no implication that he was ever was in the Territory. In the construction of statutes four principal rules are laid down and recognized by courts of experience and ability. First, what was the law before the making of the act? Second, what was the evil for which there was no remedy? Third, what remedy did the statute intend to give? Fourth, the true reason of the remedy. Further, as a rule of exposition, statutes are to be construed in reference to the principles of the common law. For the law rather infers that the act did not intend to make any alteration in the common law, other than that what is specified. See *Dwarris on Statutes*, ix. *Law Library, construction of statutes*, 43. These rules apply with accumulated force to courts and officers exercising a special and limited jurisdiction, and to special and peculiar laws arising out of statutes made for special cases, not known to the common law.

To apply these principles, and first, it cannot be denied, but that that the proceeding by attachment, as exercised under the statute, is a proceeding not arising out of the common law, but peculiar, special, limited and extraordinary in its origin, application, and effect. Then

Jones and others *against* Buzzard and Herndon.

first as to the evil. Owing to the sparse settled state of the country, and large geographical extent of the counties, a debtor could remove himself or effects out of the county, nay, out of the State, before the creditor could obtain process from the Clerk under the first section of the act. And, therefore, the twenty-ninth section of the act was intended to afford a more speedy remedy with regard to persons who were residents, and had property in the county.

A thing within the intention is as much much within the statute as if it were within the letter, and a thing within the letter is not within the statute if contrary to the intention of it. 15 *J. R.* 379, *The Peo- vs. Utica Ins. Co.*

By adverting to the first section of the act, it will be found that this remedy under that section, was not confined to resident debtors, but by a liberal construction might be made to apply to non residents, but surely the 29th section by the most liberal construction cannot be made to apply to non residents. The words of the 29th section confine the remedy to debtors in the Territory, besides the jurisdiction only attaches to a Justice of the Peace for the connty where the debtor resides. To illustrate the foregoing principles, see *Hardin*, 95, 65, 342; 1 *Mar.* 354; 2 *Mar.* 151, 350; 2 *Caines Rep.* 317; *Fitzgerald's case*, 15 *J. R.* 196. A Justice of the Peace cannot issue an attachment against a debtor who resides in another county. *Exparte Schroeder*, 6 *Cow.* 603; 1 *Wend.* 44; 2 *Kent Com.* 402.

It is a clear and salutary principle that inferior jurisdictions, not proceeding according to the course of common law, are confined strictly to the authority given them in every instance. 1 *J. C.* 20; 10 *J. R.* 161; 6 *Wend.* 440; 7 *J. R.* 77; 6 *Cow.* 224, 234; 5 *Wheat.* 116; 3 *Cow.* 208; 1 *Saund.* 74 and note; 19 *J. R.* 31, 39; 20 *J. R.* 207; *Willes*, 199, 30, 122; 3 *Dall.* 382; 4 *Dall.* 8, 12; 1 *Cranch*, 343; 2 *Cranch*, 1; *Fisher vs. Hall and Childress*, 1 *Ark. Rep.* 278; 2 *Bacon, Execution, P.*; 1 *Salk*, 408; 3 *Salk*, 320, *Guillam vs. Hardisty*, 5 *Monroe*, 388; 1 *J. J. Mar.* 407; 5 *Wend.* 170; 15 *J. R.* 196; 9 *Cowen* 227, *Latham vs. Edgerton*; 3 *Cranch*, 355; 1 *Wendell*, 215, *Gold vs. Bissel.*

Another objection to the writ is, that it does not specify the sum for which it issued with sufficient certainty.

Jones, and others, *against* Buzzard and Herndon.

Every attachment must state the nature of the demand so specially that a recovery thereon will bar a subsequent demand for the same cause. *Hardin* 95, *note.*

Would an ordinary writ, declaration, or judgment, or execution, be good with a statement of the sum, as in this case, one thousand dollars or thereabouts.

The 29th section has the following provisions, viz: ",Whereupon it shall be the duty of said Justice to issue a writ of attachment, returnable to the next Circuit Court for the county in which he resides, commanding the Sheriff, or Constable of his township, to attach the said defendant by all and singular his lands and tenements, goods and chattels, moneys, credits and effects, as is provided in the first section of an act," &c. On turning to the first section of the act, this language is found after other words, " returnable, as other writs, to the Circuit Court for said county commanding him to attach the said defendant by all and singular his lands and tenements, goods, chattels, moneys, credits and effects, or so much thereof as shall be sufficient to secure the debt," &c.

The attachment is for one thousand dollars, or thereabouts; this is uncertain. The statute requires that the sum should be specified, and must be sworn to. By the authorities, the attachment is an execution or *quasi* an execution, and either character should be certain as to the sum. The affidavit stands in place of a judgment, and must embody the same certainty as a judgment; and this certainty is necessary, not only with regard to the sum, but to all matters necessary to be set forth in the judgment and execution. Again, an attachment should not state an alternative cause for suing it out. *Hardin* 65.

" When an inferior court has no jurisdiction of the subject matter, or having it, has no jurisdiction of the person of the defendant, all its proceedings are absolutely void. Neither the members of the court nor the plaintiff, (if he procures or assists in the proceeding,) when presented by a party aggrieved thereby," are protected by the said proceedings. 5 *Wend.* 172, *&c.;* 10 *Mass. R.* 260, *Barker vs. Root.* And if the proceedings be void for any cause, they will afford

no justification. *Cunningham vs. Brooklin,* 8 *Cow.* 178, to the same purport. 3 *Cranch* 331, *Wise vs. Withers.*

In conclusion, the proceeding by attachment is at the will, and should be at the responsibility of the plaintiff; therefore, if this process be wrongfully sued out, he should be held to answer for all the damages.

In this case the defendant, not being a resident of the Territory, was not subject to this extraordinary proceeding. It was not issued by an officer residing in the county where the debtor resided; the defendant was not stated to be indebted in any specific sum. The nature of the demand is not stated so as to bar a subsequent demand for the same cause; and all these objections appear on the face of the record. The plaintiffs in error, therefore, think they have a just and legal right to claim a reversal of the judgment in this cause.

PIKE & COCKE, *Contra:*

The first question presented, and on which it is apprehended the plaintiffs principally rely, is as to the admissibility of the writ of attachment as evidence in the defence.

This question, it seems, might be disposed of by one suggestion—that, inasmuch as the plaintiffs set out the substance and effect of the writ in their second count, the defendants were clearly entitled to read it in evidence, and to have the benefit of any misdescription thereof, or variance between it and the count. Nothing can be clearer than his position.

But the defendants relied upon it as evidence under the first count also, and do not object to meeting the whole question which the plaintiffs desire to present to the court.

Two principal objections were taken to the introduction of the writ in the court below, and have also been raised here. They are, first, that a writ of attachment, under the law then in force, could not issue except for a debt certain; and not for damages; and in any event, not upon a claim based on damages arising from a tort, as this was claimed to be: and also that the declaration filed in the case, upon the return of the writ, was in *case,* and as the writ could only

issue to enforce the performance of contracts or secure the damages arising from breach of contract, therefore the writ had improperly issued, and could be no defence. The second objection was based upon the 29th section of the former attachment law, *Steele*, 88, and was that as the attachment could only issue to the county " where the debtor resides," and as the affidavit showed that Roberts was not then residing in the county of Lafayette, therefore the writ was void.

We shall examine these questions in the order in which they are presented, but desire first to ascertain that the writ, if valid, and properly issued, was admissible under the first count, and upon the plea of the general issue.

The general doctrine upon this point is thus laid down by Saunders, (1 *Pl. and Ev.* 345.) " In an action on the case, the general issue, ' not guilty of the grievances,' puts in issue all the averments of the declaration; and whatever will, in equity or conscience, according to the existing circumstances, preclude the plaintiff from recovering, may be given in evidence by the Defendant under this plea; because the plaintiff must recover upon the justice and conscience of his case, and that only. 1 *Ch. Plead.* 432." And he further lays it down that under this plea the defendant " may not only put the plaintiff upon proof of the whole charge contained in the declaration, but may give in evidence any justification or excuse of it, or show a former recovery, release, or satisfaction. See *Bird vs. Randall*, 3 *Burr.* 1373; *Barber vs. Dixon*, 1 *Wils.* 44; *Brown vs. Best*, 1 *Wils.* 175.

So in trover, under the general issue, the defendant may show any gound of defence which proves that the conversion was lawful, or that trover is not maintainable. 2 *Saund. Pl. and Ev.* 872.

These principles being established, and the gist of the action being the wrongful conversion, it follows, that to show, under the general issue, that the property was taken by virtue of a writ, regularly issued, and upon sufficient premises, and regularly served, would at once negative the right of the plaintiffs to recover.

The record, as it has come up here, exhibits the naked fact, that the defendants were permitted to read the writ of attachment. The affidavit on which the writ issued, the attachment bond, and the return of the Sheriff are made no part of the record, by bill of excep-

tion or otherwise, although they are irregularly copied by the Clerk into the transcript. See *Lenox vs. Pike*, *ante*. This being the case, the plaintiffs fail to show to the court here, either that the writ was improperly issued, or irregularly served, and therefore, as this court will now make every presumption in favor of the decision of the court below, and hold it to be right until the contrary is made affirmatively to appear, it must here be taken that the writ must have had some bearing upon the case, and was properly admitted in evidence.

But although it is undoubtedly true that upon this ground alone the decision of the court must of necessity be sustained, yet we have no objection to meet the question in the same manner as though the affidavit, bond, and return, were part of the record here, and shall proceed to do so.

First, then, it is objected that the writ issued upon a cause of action which could not, by the statute then in force, warrant the issuance of such a writ: that it was issued in an action for damages, founded on and arising from a tort, and was not for a debt certain, for which alone, it is contended, attachment would lie. What form of action was adopted in the Circuit Court, at the return of the writ, (till which time it was not necessary to file the declaration,) does not appear; for the form of action no where appears in the writ; and we have a right to claim that the declaration, when filed, was in assumpsit.

Great stress is laid upon the position that the damages claimed in the case arose from a tort—but this is altogether a mistake. The damages arose from a breach of promise, implied from the consideration of hire, and assumpsit is the natural and appropriate action for the recovery of such damages. It is true that such a breach of promise may also be the foundation of an action on the case, *ex quasi contractu*, and a party is allowed to declare either way. See 1 *Saund. Pl. and Ev.* 337; per ABBOTT, C. J., in *Burnett vs. Lynch*, 5 *B. & C.* 702; *Govett vs. Radnidge*, 3 *East* 70. The case last cited was against a common carrier who was alleged to have loaded a certain hogshead of treacle on a cart for reasonable reward paid to him and two other defendants; and that the three had so negligently conducted themselves in the loading of it that it was staved and the treacle lost. It

was an action of case, and a verdict of not guilty was found as to the two other defendants, and of guilty as to Radnidge. A motion was made to arrest the judgment, and the ground taken was that the cause of action was *quasi ex contractu,*, and so the finding of not guilty as to two defendants negatived the joint contract, and there could be no judgment on the verdict against the third. To establish this position, the case of *Boson vs. Sandford,* 2 *Shower,* 478; 2 *Salk,* 440; 3 *Lev.* 258, and 3 *Mod.* 321, was quoted, which was an action in case against ship owners, who had agreed to carry goods for freight, and suffered them to be damaged. In that case, it is said in Shower, that " the Lord Chief Justice seemed to be of opinion that all the owners should have been joined"—and in Salkeld, that " the court held that this was not an action *ex delicto,* but *ex quasi contractu,* and that it was not the contract of one but of all; that there was no other tort but the breach of trust; therefore the court gave judgment for the defendant because all the owners were not joined." *Levinz* states further that Holt, C. J. held, that the owners were not chargeable as trespassers, for then one of them might be charged alone, but in point of contract, upon their receipt of goods to be carried on hire. Lord Kenyon, in *Buddle vs. Wilson,* 6 *T. R.* 373, expressed the same opinion; and it was upon these authorities contended in *Govett vs. Radnidge,* that an action against a common carrier for neglect, &c., was essentially an action *ex contractu,* or at least *ex quasi contractu.* But Lord Ellenborough, upon the authority of *Dickon vs. Clifton,* 2 *Wils.* 319, held that the party might consider either way, either as a neglect of duty or a breach of promise.

The writ then, which is here questioned, did not issue upon a cause of action *ex delicto* at all, but the damages claimed, were claimed as resulting from a breach of promise.

Let us now examine the statute, and see whether such a writ could issue upon a claim for damages, as well as for a debt certain. It will be found in *Steele, p.* 88, *sec.* 29; and it provides that in all cases where any person has any *debt* or *demand,* &c., upon affidavit that the person is indebted to him in a sum exceeding fifty dollars, &c., he may sue out his writ before a Justice returnable to the Circuit Court. Clearly this is not restricted to a debt certain. It extends, in its

terms, to "*any debt or demand*," and no form of action is required to be named in the writ. True the affidavit must run, that the defendant is *indebted*, and so it did in this case, but we shall see that this is of no importance, nor does it carry the consequences imagined by the plaintiffs.

In Pennsylvania, by the act of 1705, the writ of foreign attachment was given for the "*restitution of debts contracted or owing*." See *Serg. on attach.* 286. Under this law, it is laid down by Sergeant, that a writ of attachment will issue in that State in other actions than those of debt and detinue. And he remarks that "although, according to a strict and literal construction of the act of assembly, the foreign attachment is confined to cases of debt, yet as this is not the only case within the mischief intended to be remedied by this law, the construction given to it is of a more extensively remedial nature." *Serg.* 43. And in *Fisher vs. Consequa*, 2 *Wash. C. C. R.* 382, where a writ of attachment had issued under the same law upon a demand for unliquidated damages, it was contended for the defendant that neither by the custom of London, nor under the act of assembly, could a foreign attachment lie, except in cases of debt. WASHINGTON, Judge, admitted, that according to the strict and literal construction of the act, the writ was confined to cases of debt. But he observed that "this is a remedial law, and ought, upon the soundest principles of construction, to be so extended as to remove the mischief and advance the remedy." He decided that a demand might be a debt within the meaning of the act, although unliquidated, if it arose out of a contract, and if the measure of damages was such as the plaintiff could by affidavit aver to be due; and further, that the remedy embraced demands which could be enforced by an action in the case, as contradistinguished from actions of assumpsit.

So in *Lenox, et al., vs. Howland, et al.,* 3 *Caines R.* 257, 323, which was an action for damages sustained by the running ashore of a vessel of the defendants, laden with goods of the plaintiffs, by the negligence or misbehavior of the captain, whereby the goods were damaged; and in which case a writ of attachment had issued, under a statute of New-York, which required an affidavit that the defendant was *indebted* to the plaintiff in the sum of one hundred dollars or

upwards; Livingston, Judge, said that although such affidavit was required, yet it did not follow " that the demand is to be so certain as to fall within the technical definition of a debt, or as to be susceptible of liquidation without the intervention of a jury." " The law," said he, "is remedial, and should be so construed as to embrace as many cases as possible. Being *indebted*, is synonimous with *owing; it is* sufficient, therefore, if the demand arise on contract." In support of this opinion he mentioned, that the 16th section of the law spoke of any *claim, debt or demand;* and on the 21st section, by which it is provided that the attachment should be superceded, if the debtor would give security to appear and plead to any action *to be brought* against him, in *any* court of *law* or *equity.*" So our statute mentions " *any debt or demand.*" He further said, " nor ought the form of declaring to vary the case. Nor can the difficulty of ascertaining the precise damages make any difference. If a carpenter contracts to build a house for a given sum, and does it so negligently that it falls the very next day it is finished, and then absconds, possessing a large property, it would be strange that I should have no remedy, because it is necessary to declare against him for a mis-feasance or non-feasance, or because it may require some little calculation to settle the damages. The substantial inquiry, in this stage of the proceeding, must be to ascertain whether the party has a legal claim arising on contract, not by what kind of action it is to be enforced." And therefore he concluded that " as the demand, then, is founded on contract, it can be of no importance in what way the injury arose, nor can we say it is of a kind not to support the attachment."

The other objection to the writ scarcely merits a remark. It is that the affidavit does not show that Roberts was residing in Lafayette county when the writ issued. It is true that the law provides that the plaintiff may apply to " some Justice of the Peace for the county where the debtor *resides*"—but this cannot mean that the debtor shall be residing there when the affidavit is made, because the writ is given whenever the defendant *has removed* out of the Territory and upon affidavit that he " *is not a resident of the Territory.*" It may mean some Justice of the county where the debtor has usually resided. Nor could the plaintiff be required to swear, first that his

debtor was a non-resident of the State, and then in the same breath, that he was then residing in the county. Moreover, admitting that the attachment could only issue in the county where the defendant last resided, as in Kentucky, still it was not necessary. for the writ to contain any allegation on that point; and if the debtor had not been last a resident of the county where it issued, the defendant could only avail himself of this objection by abating or quashing the writ; and the writ was valid until that was done. *Plumpton vs. Cook,* 2 *Marsh.* 451.

Having therefore demonstrated, that the affidavit in this case complies fully with the statute—that it is based upon, and sets out a *demand* founded on contract; and that the writ is formal and regular, it results, of course, that the writ regularly issued, and that a levy under it was valid, and could not be a conversion. The first assignment of errors is therefore disposed of. The instructions of the court, those given as well as those refused, form no part of the record. They are not so incorporated in or even referred to in, the bill of exceptions as to make them a part of the record, and consequently none of the grounds of error, based upon the instructions, are shown to exist. There is no attempt to make them a part of the record, except in the motion for a new trial, where it is stated, that the court erred "in refusing the first and second instructions asked by the plaintiffs' counsel; and in giving the instructions to the jury asked by the counsel for the defendant." Instructions cannot thus be made a part of the record; and it does not help the case that the clerk below has sent up here two papers purporting to have been filed in the progress of the case. As little does it appear to the court here that the court below either gave or refused any of the instructions. That fact is not proven either by the endorsements "*given*" and "*refused*" which appear here and there on those papers, by whom made nobody knows; nor by the fact that such an allegation was made in their motion for a new trial. That motion might have been overruled because the allegations made in it were untrue in point of fact. This court decides only from the record; and there is no record, either of what instructions were asked, or, if *any* were asked, of what were given and what refused. See *Goldsbury vs. May,* 1 *Lit.* 254; *Law vs. Merrils,* 6 *Wend.* 268.

Even were this not the case, yet the instructions, except the first which is stated in the assignment of errors to have been overruled, were asked upon abstract questions of law. No evidence is brought up here, so as show this court that there was a state of case below to which the instructions were applicable. For example, the assignment states the refusal of the court to instruct the jury, that "*if they should find,*" that the steamboat was the joint property of the plaintiffs, then the writ of attachment was no protection. What *did* the jury find? Where is the evidence that the plaintiffs were joint-owners of the steamboat? If this refusal to instruct was wrong, the plaintiffs here can have no advantage of it, except by showing to the court that they were prejudiced by it. That can only be done, by showing that they *had* proven that they were joint-owners.

So again it is assigned for error that the court instructed the jury that, in order to find against the defendants, they must find certain facts with regard to the sheriff's negligence and the co-operation of the defendants in, or the causing of, that negligence. No evidence whatever is brought here, to which that instruction is applicable. It might have been wrong, and yet there might have been other evidence sufficient to warrant the finding, notwithstanding the instruction, or there might have been no evidence whatever that the boat was lost, or if so, that the sheriff was guilty of any negligence whatever.

We make these points, because we desire the practice to be definitely settled—not because we shrink from meeting the questions attempted to be raised. Taking the questions presented by the assignment of errors as mere abstract questions of law, and the court below was right—right in every point, beyond the shadow of a doubt.

Was the court below correct in deciding that under a writ of attachment against one part owner of a vessel, the whole vessel may be seized by the officer? Undoubtedly. The assignment of errors speaks of "*partnership* property." There is no partnership in the matter. Joint-owners of a vessel are not partners as to the vessel; though they may be as to the freight. This position hardly needs a reference to authority to sustain it. See however, *Nicoll vs. Mumford*, 4 *J. C. R.* 523; *ex parte Young*, 2 *Ves. and Bea.* 242; *ex parte Parry*, 5 *Ves.* 575; *Nicoll vs. Mumford*, 20 *J. R.* 635, per Spencer,

Chief Justice; 3 *Kent Com.* 16, 17; *Story on Agency*, 42. Admitting therefore that the whole *partnership* property cannot be levied on, or seized by attachment for the debt of one *partner*, let us see if the whole of a chattel held by several tenants in common, cannot be seized for the debt of one of them, though only his interest in the chattel can be sold.

In *the matter of Smith*, 16 *J. R.* 105, the Supreme Court of New-York decided that an attachment, under the act for relief against absent and absconding debtors was analagous to an execution, in this respect, upon the authority of *Morley vs. Stromborn, et al.*, 3 *Bos. and Pul.* 254, and *The matter of Chipman*, 14 *J. R.* 217—and that in such case, where the writ was against an absconding *partner*, the sheriff could only seize the separate property of that partner; and added, "the case of partners is different from that of tenants in common of a chattel." So in *Mersereau vs. Norton*, 15 *J. R.* 179, which was a case almost precisely parallel with this. The court said, that the only question raised was, whether the Sheriff, under an attachment, has a right to take and sell property, of which the absconding debtor was only a tenant in common, when that property is found in the possession of the other tenant. And the court said, " of this there can be no doubt. The Sheriff in such cases seizes *all*, and not a *moiety* of the goods sufficient to cover the debt, and sells a moiety thereof undivided, and the vendee becomes tenant in common with the other partner—and even where the Sheriff sells the joint property as the sole property of the defendant, still no more than the defendant's interest passes; and the purchaser becomes tenant in common with the original co-tenant of the defendant. The same point was decided, as to an execution, *Heydon vs. Heydon, Salk.* 392, and *Smith vs. Stokes*, 1 *East.* 367.

As to the fourth assignment, to offer an argument upon it would be superfluous. No court has ever decided that because a plaintiff orders execution to issue, *therefore* he is liable to the defendant for the Sheriff's negligence in keeping the property levied on ; and if not liable in case of an execution, as little could he be liable in case of an attachment. It is not his act that the Sheriff fails to exercise proper care. The negligence of the Sheriff, and consequent loss of the pro-

perty does not flow from the act of the plaintiff in issuing the process. It is independent thereof—so much so that the plaintiff himself has his action against the Sheriff.

In every aspect of this case it is conclusive against the plaintiff. There is nothing tangible upon which this court can base any action or exercise any judgment. At every step we wander into the realms of fanciful supposition. Taking the case *stricti juris*, there is nothing before the court but the naked verdict and judgment, and the writ of attachment. The plaintiffs do not show to the court that the writ issued on improper premises—they fail to show on what property it was levied—they fail to show that the plaintiffs had any interest in the property levied on, or if so, whether their interest was joint.

Admit the return to be part of the record, and it shows that Jett, the co-defendant of these defendants in error, delivered over all the property levied on to his successor in office, and of course no recovery could be had on the second count.

Furthermore, if all the papers sent up, are to be taken as part of the record, or even resting upon the second count itself, the plaintiffs show no cause of action for negligence. A levy upon sufficient personal property to satisfy the execution, is a satisfaction of the debt. *Shepard vs. Rowe*, 14 *Wend.* 262. It is so deemed, because the defendant is divested of his possession and control of the property. It is lost to him. *Hoyt vs. Hudson*, 12 *J. R.* 207; *Clark vs. Withers*, 2 *Ld. Raym.* 1072; 1 *Salk*, 322. He is discharged, even if the Sheriff waste the goods, *Ladd vs. Blunt*, 4 *Mass.* 403. By a lawful seizure the defendant loses the property in the goods. *Ib.*; *Jackson vs. Peer*, 4 *Cow.* 417. Upon such levy the Sheriff becomes responsible to the plaintiff. *Clark vs. Withers, ubi sup.; Starr vs. Trustees of Rochester*, 6 *Wend.* 562. The same reason would make a levy under an attachment a satisfaction of the debt—more especially, as by our statute, execution only runs against the property attached. Undoubtedly the Sheriff would be liable to the plaintiff for negligence in keeping property levied on by attachment, and if so the defendant could have no action against him, unless where the value of the property levied on was greater than the debt claimed and due. The plaintiff here does not show that the property was worth more, or a verdict recov-

Jones, and others, *against* Buzzard and Herndon.

ered for less than the $1,000 claimed in the affidavit—and of course he shows no cause of action.

Again, by the levy, if the writ was regular, the property in the boat was divested from Roberts, and Jones and McKean became co-tenants of the boat with the Sheriff, until she was sold, and then with the purchaser. Roberts, having no longer any property in her, shows upon the face of the declaration, that he is not entitled to sue, and that there is a misjoinder of plaintiffs.

LACY, *Judge*, delivered the opinion of the court:

The record in this case presents but a single question for our deci-sion, which is, did the court below err in permitting the defendants to read to the jury the writ of attachment as evidence in the cause. It is insisted on behalf of the plaintiff, that the court erred in refusing to give certain instructions asked for by him, and also in granting others, at the instance of the defendant; but before we are at liberty to ex-amine the correctness or incorrectness of these instructions, it is neces-sary to ascertain if any such instructions were asked for, refused, or given, and excepted to upon the trial, and made a part of the record. We have found this inquiry every way easy of solution. It is perfectly clear that the record wholly fails to show any one of these facts. It is true that the Clerk has copied into the transcript certain instructions, and has marked them filed, and has written upon the margin opposite to each instruction, the word " given" or " refused." These entries are mere *clerical memoranda* made without any order or authority of the court, and consequently they cannot be regarded as forming any part of the record in the case.

It is said that the instructions properly belong to the record, because the plaintiff in his motion for a new trial refers to them, and that the court below in overruling his motion, put them on file upon the rolls. The position is wholly untenable. The plaintiff in error moved the court for a new trial; first, because the verdict was contrary to law; and secondly, because the court erred in giving and refusing certain instructions to the jury. The motion for a new trial was overruled, and the party making it, did not except to the opinion of the court, in deciding the points. It is impossible for this court judicially to know

upon what grounds the motion for a new trial was refused.   The presumption is in favor of the verdict and judgment below, and they must stand until they are overthrown by other affirmative proof.   In the present instance there was no exception filed to the opinion of the court overruling the plaintiffs' motion for a new trial, and that circumstance alone conclusively proves that there was no error in the opinion given, or if there was, the defendant expressly waived it, by not excepting at the time.   For aught that appears from the record, the court below refused to grant a new trial upon the ground that no such instructions as were referred to in the motion, were ever asked or insisted upon, or reserved at the trial.   The instructions, therefore, may or may not have been given or refused upon the trial, but as they form no part of the record before this court, we cannot regard them in any decision we may make affecting the merits of the controversy now pending. This point has been expressly ruled in *Gray vs. Nations*, 1 *Ark.* 557, and *Lenox. vs. Pike and wife, and Smith and wife, ante.*

The record in this case presents another preliminary question, which is, where a party excepts during the progress of a trial, 'and afterwards there is a verdict and judgment entered up against him, and he thereupon moves for a new trial, whether that is not a waiver of his exceptions?   As this point is one of much interest and magnitude in practice, we do not think it advisable to express any opinion in regard to in the case now under consideration, especially as we have not a full bench, and the same result follows in the decision we are about to make.

The only question then to be decided is, was the writ of attachment properly or improperly admitted as evidence in the case?   In order to arrive at a just conclusion upon this point, it is necessary to consider the character and form of the action, and what the pleadings put properly at issue.

An action on the case, properly so called, is founded upon the mere justice and conscience of the plaintiff's right to recover, and is in the nature and effect of a bill in equity.   Therefore a recovery, release, or satisfaction need not be pleaded, but may be given in evidence under the general issue.   Whatever will in equity, or in conscience, preclude the plaintiff's right of recove-

ry may be given in evidence in an action on the case. And the reason according to Chitty is that "the plaintiff must recover upon the conscience of his case, and upon that only." In action therefore upon the case, under the plea of not guilty, the defendant can not only put the plaintiff upon proof of the whole charge contained in the declaration, but he may give in evidence any justification or excuse of it, which will defeat the plaintiff's right of action. 1 *Ch. Pl.* 487; *Bird vs. Randall,* 3 *Burr.* 1365; *Barber vs. Dixon,* 1 *Wils.* 45; 2 *Saund.* 155, *a. u.* So in trover, under the general issue, the defendant may show any ground of defence, which proves that the conversion was lawful, or that trover was not maintainable. 2 *Saund. Pl. and Ev.* 872.

The affidavit upon which the writ issued, and all other proceedings prior to the issuing of the writ, are made no part of the record by bill of exceptions, or otherwise. This being the case, the plaintiffs have failed to show to this court either that the writ was illegally issued, or irregularly served. We are bound to presume in favor of the decision of the court below, until the contrary is made affirmatively to appear. Again the second and third counts do not allege that the writ of attachment was either improvidently or illegally issued, and therefore under these counts, the illegality of the proceedings of the Justice of the Peace cannot be questioned or put in issue.

The liability of the defendants, if it exists at all, under the second and third counts, arises from their laches or negligence, in keeping the property levied upon. If the writ of attachment is competent evidence in the case for any purpose whatsoever, of course the defendants below had a right to read it to the jury. The plaintiffs recited and set out in the second count of their declaration, the affidavit upon which the attachment issued, the writ itself, and also the levy and return of the Sheriff. Having referred to these papers, or made these recitals, was it not lawful for the defendants to introduce the writ of attachment as evidence upon the trial?

The plaintiffs having voluntarily, by their own act, made the writ a part of their declaration, they have certainly no right to object to its going in evidence to the jury. The defendants, by its introduction, only prove what the plaintiffs had alleged. If the Sheriff, as the

plaintiffs have declared, acted under authority, and by virtue of the of the writ, at the instigation and direction of the defendants, he surely acted under color of the law, and consequently, the writ furnished a good excuse, if not a complete justification to the defendants. The writ itself recited the affidavit upon which it was founded, and was issued by an acting Justice of the Peace; and this being neither controverted nor denied, but expressly admitted and insisted on in the second count of the declaration, the presumption obtains that it was properly issued and regularly executed, and consequently legitimate proof in the case. The recital of the affidavit in the writ may be regarded as part and parcel of the writ; and as that recital is not inconsistent with the provisions of the statute, authorizing such a proceeding, the legal conclusion is irresistible that the defendants in error laid a proper foundation for the attachment, and that the Justice of the Peace acted correctly in issuing the writ, and directing it to the Sheriff.

This brings us to the consideration of the only remaining question, which is, had the Justice of the Peace lawful power and authority to issue the writ, returnable to the Circuit Court, or were all his acts and proceedings therein illegal and extra-judicial. This latter proposition has been argued with much earnestness, and very considerable ability and learning by the plaintiffs' counsel; which has induced us to give to this branch of the subject the most mature reflection and investigation. The result of our enquiries will now be stated. There being no proof in the record that either the Sheriff or the defendants were guilty of any laches or negligence in keeping the property after the levy, or while it was in custody of the law, their liability, if it exists at all, must depend wholly and exclusively upon the illegality of the proceedings before the Justice of the Peace. Under the count in trover, they may be so charged, provided the facts show a tortious taking and conversion of the property. In form the action of trover is a fiction; but in substance it is a remedy to recover the value of a personal chattel wrongfully converted by the defendant. The injury lies in the conversion, and that constitutes the gist of the action. In order to support the action two things are necessary for the plaintiff to prove: First, property in himself, either general or special; and

second, a wrongful conversion by the defendant. The conversion may be proved by a wrongful taking, or by an illegal assumption of ownership, or by an unwarrantable detention. In the present instance, if the plaintiffs had showed a tortious taking of the property by an unlawful levy, then they had established a conversion, and the action would lie. 1 *Ch. Pl.* 148, 149, 153; 3 *Black. Com.* 161, 162, 163; *Rackham vs. Jessup,* 3 *Wils.* 332; *Cooper vs. Chitty,* 1 *Burr.* 20; 2 *Saund. R.* 47 *a, n.* 1.

The proceedings were commenced and prosecuted under an act of the General Assembly of the Territory of Arkansas, approved October, 22, 1823. The 29th section of the act declares that "in all cases where any person has any debt or demand against any other person in this Territory, and he shall have good cause to believe that said debtor has removed or is about to remove himself or effects out of this Territory, it shall be lawful for such creditor, in all cases where the demand shall exceed the sum of fifty dollars, to apply to some Justice of the Peace for the county where the debtor resides, and to file his affidavit in writing, stating that the person (naming him) is indebted to him in a sum exceeding fifty dollars, and that he has good cause to believe that the said defendant is not a resident of or residing in this Territory, or that he is about to remove himself and effects without this Territory, (as the case may be,) so that the ordinary process of law cannot be served on him, and he, the said plaintiff is thereby in danger of losing his said debt; whereupon, it shall be the duty of said Justice to issue a writ of attachment, returnable to the next Circuit Court for the county in which he resides, commanding the Sheriff or Constable of his township to attach the said defendant, by all and singular his lands and tenements, goods, chattels, moneys, credits, and effects, as is provided in the first section of an act entitled " an act to provide a method of proceeding against absent and absconding debtors." A Justice of the Peace certainly possessed the power under and by virtue of this section to issue a writ of attachment returnable to the Circuit Court, provided there is nothing in the organic law, or any subsequent Territorial act forbidding it.

The act of Congress organizing the Territorial Judiciary, vests its power in a Superior Court, and in such inferior courts as the Legisla-

lature may from time to time institute and establish, and in Justices oft he Peace. The act, in defining and limiting the original and appellate jurisdiction of the Superior Court, contains no limitation or restriction upon the legislative power in regard to establishing inferior tribunals, or in prescribing the duties of its officers. In the exercise of this discretion full liberty is given the Legislature to organize the inferior courts in any manner they may deem advisable for the public good: provided in doing so, they do not interfere with the original or appellate jurisdiction of the Superior Court. This being the case, the legislature possessed ample power to give to a Justice of the Peace authority to issue a writ of. attachment, and make it returnable before the Circuit Court, in such manner and under such regulations as they might think proper to prescribe. There is no. prior or subsequent act of the Territorial government repealing the 29th section of the statute above recited; and, therefore, this court does not take upon itself to determine whether the issuing of the writ is a judicial or ministerial act. For by the organic law, and under the Territorial Government, a Justice of the Peace was competent to perform either or both acts, at one and the same time, or at different times.

The question then recurs, what is the true meaning and construction of the 29th section of the act regulating the proceedings in case of attachments? The terms and provisions of the act are somewhat confused and contradictory; but its meaning and objects are readily discoverable from the evils intended to be remedied, and the means employed for that purpose. A Justice of the Peace has no authority to issue the writ unless the party applying for it brings himself within the provisions of the act. What, then, is the affidavit required to state? Simply that the defendant *is indebted to the plaintiff* in a given sum, which is above fifty dollars, and " that he has good cause to believe the defendant is a non-resident of, or about to remove himself or effects without the Territory, so that the ordinary process of the law cannot reach him, whereby the plaintiff is in danger of losing his debt." The writ lay, then, against resident or non-resident debtors; or against such persons as were endeavoring to remove themselves and effects beyond the jurisdiction of the Territory; and upon any demand, liquidated or unliquidated, that exceeded fifty dollars. The

Justice of the Peace is bound to issue his writ in the county where the defendant's property can be found, and the writ is made returnable to the Circuit Court. It was intended to secure to creditors the payment of their debts, in all cases where their debtors attempted to remove themselves or effects beyond the jurisdiction of the court, or limits of the Territory. The act is evidently remedial in its nature and character, and therefore must be construed liberally to prevent the mischief for which it was enacted. This principle will be found fully sustained and illustrated in many of the adjudications upon the issuing of writs of attachment under statutes similar to our own. *Fisher vs. Consequa*, 2 *Wash. C. C. R.* 382; *Lenox, and another, vs. Howland, and another*, 3 *Caines R.* 257 and 323; *Sergeant upon Attachments*, 286. If this principle be true, then a writ of attachment would lie under the act of 22d October, 1823, as well upon an unliquidated as a liquidated demand. The words of the statute are, "if any person is indebted to another in a sum exceeding fifty dollars." What is the meaning of the term indebted? Is it confined to a debt or demand certain? Or does it include damages arising from a breach of contract that may be rendered certain? The term is certainly general in its meaning and in its application, and is certainly synonimous with owing. To give it any other construction, would certainly not prevent the mischief, or advance the remedy given by the statute. The statute being remedial, embraces all cases where, upon any claim or demand, one person is indebted to another in a sum exceeding fifty dollars. The affidavit is the foundation of the Justice's authority to issue the writ.

To put any other construction upon the act, would be to authorize non-resident or absconding debtors to withdraw their means or effects beyond any legal process whatsoever. The idea that a creditor and debtor must both have been residents of the Territory before an attachment could issue, is wholly untenable. It is expressly contradicted by the words of the act itself, and it is alike forbidden, as well by all true rules of construction upon remedial statutes, as by its spirit and intention.

The mischief intended to be prevented certainly would not be remedied if a non-resident or absconding debtor was allowed, by such

Jones, and others, *against* Buzzard and Herndon.

an interpretation, to defeat the just claims or demands of a resident or non-resident creditor. In the case now before the court, so far as the writ of attachment recites the facts of the affidavit upon which it is founded, they are in strict conformity with the regulations of the statute, and almost a literal copy of the act. The Justice of the Peace was then fully authorized to issue the writ, and as the officer acted in obedience to its commands, he was strictly justifiable in making the levy.

If the view we have taken of this subject be correct, then the Territorial Legislature, as well as the Justice of the Peace, acted strictly within the pale of their organic and legal duties, and of course the defendants in the action could not be liable in trover as for a tortious conversion of the property by an unlawful levy, under the first count in the declaration. The judgment of the court below must therefore be affirmed with costs.